IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES LUCIANI          :          CIVIL ACTION
                              :          NO. 10-2918
         v.                     :
                              :
CITY OF PHILADELPHIA, et al    :

O'NEILL, J.                                             July 23, 2012

## MEMORANDUM

Plaintiff James Luciani has moved to amend his complaint against defendants the City of

Philadelphia, Charlesretta Meade[1] and Enrico Foglia, and to substitute "Unknown Successor or

Representative of Enrico Foglia" for defendant Enrico Foglia.[2] For the reasons that follow, I will

deny plaintiff's motion for leave to amend his complaint and his motion to substitute.

## BACKGROUND

From 1985 until 2008, plaintiff was employed by the City of Philadelphia. Compl. ¶ 20.

He worked in the City's Board of Revision of Taxes from 1989 until 2008 and at the time of the

events giving rise to this action was a Real Property Evaluator. Compl. ¶¶ 21-22. In that

capacity, plaintiff was charged with the responsibility of assigning a dollar value to large

commercial properties in Center City Philadelphia including office buildings and similar

structures for real estate tax purposes. Compl. ¶ 22. Effective July 31, 2008, plaintiff was

terminated. Compl. ¶ 56.

Plaintiff's initial complaint alleges that he was wrongfully terminated without a proper

---

[1] In his memorandum in support of his motion for leave to amend, plaintiff states that he has decided to dismiss Meade from the action. Defendants state that they do not oppose her voluntary dismissal. Accordingly, I will dismiss plaintiff's complaint as against Meade.

[2] Foglia died on or about April 14, 2011.

pre-termination hearing.  Compl. ¶¶ 51; 56-59.  From the outset of this litigation, plaintiff has

asserted that he was terminated based on a "false and pretextual charge that Plaintiff had violated

the [City's] Residency Requirement."[3]  Compl. ¶ 60.  His complaint alleges that on June 27,

2008, Foglia signed a "Notice of Suspension Without Pay" which stated, inter alia, that

> A recent investigation by the City's Inspector General has
> concluded that you are in violation of [the City's residency]
> requirement by establishing and maintaining your bona fide
> residence in Woodbury, New Jersey.
>
> Based on the findings of the Inspector General, Federal Bureau of
> Investigation and as provided in Civil Service Regulation 17.01,
> the [BRT] is notifying you that you are hereby suspended for thirty
> (30) calendar days with the intent to dismiss for violation of the
> residency requirement.

Compl. ¶ 46; see also Compl. Ex. C.  According to the allegations in plaintiff's complaint, on

July 17, 2008, Foglia signed and the City mailed to plaintiff a Notice of Dismissal which

reiterated the Inspector General's conclusion that plaintiff had violated the residency requirement

and which again cited the findings of the Inspector General and the FBI.  Compl. ¶ 54-55; see

also Compl. Ex. D.

    Plaintiff's complaint alleges that "[i]n fact, Plaintiff did not violate the Residency

Requirement and had always maintained a bona fide residence in the City when he was employed

by the City.  The City therefore had no valid or legitimate reason to suspend Plaintiff or to

terminate his employment . . . ."  Compl. ¶ 41.  His complaint asserts that defendants wrongfully

fired him because he revealed certain information to the City Controller's Office about pervasive

-----

[3]      Under the Philadelphia Home Rule Charter, § 20-101, "[e]very employee in the
civil service shall establish his or her bona fide residence in the City within six months of his or
her appointment, and shall thereafter maintain bona fide residence in the City."

corruption in the BRT.  Compl. ¶ 29-30.  Counts, I, II and III of plaintiff's complaint allege

violations of the Fourteenth Amendment as against the City, Meade and Foglia for causing

plaintiff to suffer deprivation of his property interests (his right to civil service employment),

Compl. ¶ 58, and liberty interests (his interest in "his good name, reputation, honor and

integrity), Compl. ¶ 59, under color of state law and without due process of law, Compl. ¶¶ 64-

65, 69-70 and 75-76.  Counts IV, V and V of plaintiff's complaint assert violations of plaintiff's

First Amendment rights, alleging that he was suspended and terminated in retaliation for certain

statements plaintiff allegedly made to the City Controller's Office in September 2007 regarding

"issues of public concern."  Compl. ¶¶ 29-30, 85, 90, 95.

 Plaintiff now seeks leave to amend his complaint, asserting that

> [t]he depositions and production of documents revealed facts that
> require an Amended Complaint to: (a) [p]lead more particular
> allegations concerning the violation of Plaintiff's rights by agents
> and employees associated with Defendant City of Philadelphia
> . . . ; (b) [n]ame two rogue FBI agents as additional defendants
> pursuant to claims brought under <u>Bivens v. Six Unknown Named
> Agents</u>, 403 U.S. 388 (1971) . . . ; and (c) [p]lead a broad
> conspiracy, as revealed in discovery, between the City and the
> rogue FBI agents.

Dkt. No. 19 at ¶ 3.  In counts I and II of his proposed amended complaint, plaintiff restates his

claims under the Fourteenth Amendment against the City and Foglia's successor or

representative.  Dkt. No. 19-2 at ¶¶ 153-163.  Proposed counts III and IV restate plaintiff's First

Amendment claims against the City and Foglia's successor or representative.  <u>Id.</u> at ¶¶ 164-176.

Counts V and VI of plaintiff's proposed amended complaint seek to add two <u>Bivens</u> claims

against FBI Special Agents Brian Nichilo and Raymond Manna for violation of plaintiff's

property and liberty interests under the Fifth Amendment.  <u>Id.</u> at ¶¶ 177-187.  Proposed Count

VII seeks to plead a claim of civil conspiracy against the City and the two FBI agents.  Id. at ¶ 188-191.

Plaintiff's proposed amended complaint alleges a conspiracy between proposed defendants Nichilo and Manna and Thomas Steel, a contract investigator with the City's Office of Inspector General, to fabricate evidence of a residency violation by the plaintiff in order to extort information from plaintiff about corruption in the BRT, including incriminating information about State Senator Vincent Fumo.  See, e.g., Dkt. No. 19-2 at ¶¶ 38,47-49.  Plaintiff contends that the original complaint "told only part of the story" because he learned "from the depositions and documents generated during discovery" that Nichilo and Manna decided to target him "as a person who could provide them with information about corruption at the BRT involving former Pennsylvania State Senator Vincent Fumo" at around the same time that the Controller's office reported plaintiff's whistleblowing to his BRT superiors.  Dkt. No. 19-1 at 2-3.  Plaintiff asserts that Nichilo and Manna sought to "extort" information from plaintiff with the assistance of Steel.  Dkt. No. 19-2 at ¶ 38-42.  He alleges that "Nichilo and Steel agreed . . . that they would pretend to investigate Plaintiff in an effort to intimidate him" for purposes of obtaining evidence against Fumo and "would confront Plaintiff with . . . threats to his liberty and job."  Id. at ¶ 44.  Plaintiff now contends that Nichilo and Steel agreed to threaten him with the following allegedly false assertions:  (1) "that Plaintiff had failed to report all of his real estate interests on the annual financial disclosure forms he filed with the Commonwealth of Pennsylvania"; (2) "that Plaintiff maintained his residence in Woodbury, New Jersey, for at least 20 years, in violation of the City's residency requirement"; and (3) "that Plaintiff was the target of a Grand Jury criminal investigation for an undefined crime that was related to his name being

mentioned in the investigation of" a transaction involving a BRT employee who reduced a real estate assessment in exchange for a bribe from a real estate developer. Id. at ¶ 44(a)-(c).

Plaintiff's proposed amended complaint alleges that Nichilo fabricated a grand jury subpoena and handed it to plaintiff at a meeting in order to scare him into coming forward with additional information about Fumo. Id. ¶ 84-85. In his proposed amended complaint, plaintiff also alleges that Nichilo and Manna created an FBI report – an FD-302 – that falsely stated that plaintiff lived in New Jersey in knowing violation of City policy. Id. at ¶ 67. He contends that Nichilo showed a copy of the FD-302 Report to Steel, id. at ¶ 69, and that on June 6, 2008, the OIG issued a report concluding that plaintiff had violated the residency requirement based on the false information Nichilo shared with Steel, while disregarding other information that would have established plaintiff's residence in Philadelphia. Id. ¶¶ 99-104.

Plaintiff received a copy of the OIG report on or about July 17, 2008. Dkt. No. 19-2 at ¶ 131. The report identified Thomas A. Steel as the investigator making the report. Dkt. No. 23-1 at ECF page 3. It also identified Nichilo and Manna as having participated in the investigation. Id. at ECF page 4. Setting forth the basis for OIG's investigation, the OIG report explained that:

> On September 19, 2008, FBI Special Agent (S/A) Brian Nichilo reported that BRT employee, James Luciani, may have a conflict of interest involving the purchase of a condominium from James Campanella, a Real Estate developer. S/A Nichilo believed that Luciani was also living outside the City of Philadelphia in Woodbury, NJ.

Id. at ECF page 3. The report declined to sustain the allegation that plaintiff had violated the State Ethics Act because he did not purchase a condo from Campanella. Id. at ECF page 4. The report sustained the allegation that plaintiff had violated the city's residency requirement,

concluding that plaintiff "was not credible when he claimed that he has never lived at his Woodbury[, N.J.] address.  By his own admission to the FBI agents during his interview on September 20, 2007, he has lived at that address for twenty years and knew that it was a violation of City policy."  Id. at ECF page 9.

Plaintiff filed his complaint on June 17, 2010.  Defendants answered plaintiff's complaint on October 5, 2010.  Dkt. No. 5.  Also on October 5, defendants served plaintiff with their initial disclosures.  Dkt. No. 23-1 at 17-18.  Nichilo and Manna were listed as potential witnesses in defendants' initial disclosures.  Id. at 18.  Defendants' initial disclosures also identified the OIG report and "the OIG's file pertaining to the investigation of the plaintiff's place of residency" as potentially relevant documents in their possession.  Id.  The OIG Report was produced in defendants' first response to plaintiff's request for production of documents.  Dkt. No. 23 at 15. Defendants also assert that plaintiff received a copy of the FD-302 report in March 2011.  Dkt. No. 23 at 5, 15.  Steel was deposed on August 9 and September 19, 2011.  Dkt. No. 23 at 16. Nichilo was deposed on April 8 and May 19, 2011.  Id. at 15-16.  Manna was deposed on July 27, 2011.  Id. at 16.  Fact discovery in this matter concluded on December 30, 2011.  Dkt. No. 18, ¶ 1.  Plaintiff filed his motion for leave to amend on January 27, 2012.  Dkt. No. 19.

**DISCUSSION**

**I.    Motion for Leave to Amend**

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court."  Foman v. Davis, 371 U.S. 178, 182 (1962).  Rule 15(a) mandates that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman, 371 U.S. at 182.  Defendants oppose plaintiff's motion to amend his complaint on the grounds that plaintiff's motion for leave to amend was unduly delayed, that they would be subjected to prejudice if plaintiff is allowed to add new defendants and a new cause of action against the City and because plaintiff's claims against the FBI agents are futile because they are time-barred.  Because I conclude that the untimely motion to amend would be unduly prejudicial to defendants, I need not consider whether the proposed amendments are also futile.

    **A.**    **Undue Delay**

I find that plaintiff has not supplied an adequate reason to excuse his delay in seeking to amend his complaint.  His motion for leave to amend was filed after the close of discovery and one month before the deadline for dispositive motions.  Requests to allow amendment of a complaint after the close of discovery or at the summary judgment stage are often denied on the basis of undue delay.  See, e.g., In re Madera, 586 F.3d 228, 234 (3d Cir. 2009) (finding motion to amend "untimely" where the party waited until its adversary's motion for summary judgment to seek leave to amend and the proposed claims "[we]re not based on evidence that came to light after discovery"); Frasier v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003) (finding that the District Court acted within its discretion in denying leave to amend where plaintiff sought to amend his complaint "at the eleventh hour," i.e. the day before his opposition to summary judgment was due); Berger v. Edgewater Steel Co., 911 F.2d 911, 923-24 (3d Cir. 1990) (rejecting motion for leave to amend where motion was filed after the close of discovery and months after the information forming the basis for the desired amendment became available

to the plaintiffs); <u>Averbach v. Rival Mfg.Co.</u>, 879 F.2d 1196, 1203 (3d Cir. 1989) (finding undue delay where plaintiff sought to assert a new cause of action four days before the close of discovery).  In considering whether to deny plaintiff's motion to amend on the basis of undue delay, I must "'focus on the plaintiff's motives for not amending [his] complaint to assert this claim earlier.'" <u>Lindquist v. Buckingham Twp.</u>, 106 Fed. App'x 768, 775 (3d Cir. 2004), <u>quoting</u> <u>Adams v. Gould, Inc.</u>, 739 F.2d 858, 868 (3d Cir. 1984).  Plaintiff "bears the burden of proof in explaining the reasons for delay in seeking leave to amend."  <u>Tarkett, Inc. v. Congoleum Corp.</u>, 144 F.R.D. 289, 290 (E.D. Pa. 1992).

Plaintiff contends that he "did not know of the wrongful acts of Nichilo and Manna until late in the discovery period."  Dkt. No. 19-1 at 37.  He asserts that "as far as [he] knew when the Original Complaint was filed, and for a long time thereafter, he had been terminated by the City solely in retaliation for whistle-blowing to Bridgeman and the Controller's Office about corruption engaged in by BRT officials; and there was no ascertainable link between Nichilo and Manna to the City's retaliation for whistleblowing." <u>Id.</u>  Plaintiff contends that at the time he filed his complaint, he "had received no report or evidence directly from the FBI that would have caused him to believe that the FBI was the source of the false residency charge."  Dkt. No. 25 at 3.  He further contends that before deposing Nichilo, Manna and Steel, he lacked "a comprehension of what may have motivated the FBI agents to fabricate the false residency allegation, and the knowledge of why and how they used Plaintiff's phony admission against him" and that absent this information he had no context for his "claim that the FBI agents participated in government operations run amok."  Dkt. No. 25 at 4.

Defendants counter that the facts relevant to the proposed amendments to plaintiff's

complaint were known to him nearly two years before he filed his initial complaint.  Indeed,

plaintiff's own allegations that Nichilo and Manna interrogated him at the Woodbury Property on

September 27, 2007 support a finding that plaintiff knew at the time he filed his complaint that

Nichilo and Manna were involved in investigating plaintiff's residency.  Dkt. No. 19-2 at ¶¶ 58-

64.  In his proposed amended complaint, plaintiff alleges that "[i]n response to their questions

that related to residency, Plaintiff told Nichilo and Manna . . . that[ ] he did not reside at the

Woodbury Property," and that "Nichilo and Manna acted as if they did not believe Plaintiff when

he denied residing in the Woodbury Property; and they threatened Plaintiff's job security when

they asked him during the September 20, 2007 interrogation if he was aware that his employment

with the City could be terminated for violating the City's residency requirement."  Id. ¶¶ 63-64.

Plaintiff also claims that Nichilo and Manna threatened to take criminal action against him

"based upon the False Grand Jury Investigation . . . and they acted as if they were convinced that

Plaintiff was not being forthcoming and candid about everything he knew" in the course of that

same conversation.  Id. ¶ 60.  Plaintiff did not need additional discovery to unearth information

about a conversation in which he was a participant.

        Further, as set forth in plaintiff's complaint, before this lawsuit was instituted, plaintiff

had access to both the notice of suspension and the notice of termination, each of which notified

plaintiff that he had been found to violate the City's residency requirement based, in part, on

findings made by the FBI.  Compl. ¶¶ 39, 46.  Plaintiff also had access to the OIG report before

he commenced this action.  Dkt. No. 19-2 at ¶ 131.  The OIG report contained Nichilo's

allegedly false statement to Steel that plaintiff had admitted that he lived outside of the City.

Dkt. No. 23-1 at ECF Page 5.

Furthermore, after plaintiff filed his initial complaint, but long before the close of discovery, plaintiff had access to the facts which he now claims were unknown.  Defendants' initial disclosures, served on October 5, 2010, identified the OIG report and "the OIG's file pertaining to the investigation of the plaintiff's place of residency" as potentially relevant documents in their possession.  Dkt. No. 23-1 at 17-18.  Nichilo and Manna were listed as potential witnesses in defendant's initial disclosures.  Id.  A copy of the OIG Report was produced to plaintiff in January, 2011.  Dkt. No. 23 at 8.

Plaintiff had ample information available to him prior to the close of the discovery period from which to amend his complaint to add allegations pertaining to Nichilo and Manna's alleged conspiracy with the City and, based on the information previously available to him, has not adequately explained why he only now seeks leave to amend.

**B.     Prejudice**

"[D]elay alone will not preclude amendment.  It must be coupled with a resultant burden on the court or prejudice to the other party."  Richter v. Pfundt, No. 09-2604, 2009 WL 5064381, at *1 (E.D. Pa. Dec. 24, 2009), citing Cureton, 252 F.3d at 273.  To determine whether undue prejudice to defendants is sufficient to deny plaintiff's leave to amend, I must look to the hardship that plaintiff's proposed amendment would impose on the defendants.  Cureton, 252 F.3d at 273.  I must consider whether allowing plaintiff's amendment would result in additional "discovery, cost, and preparation to defend against new facts or new theories."  Cureton 252 F.3d at 273.  See also Hofkin v. Provident Life & Accident Ins. Co., 81 F.3d 365, 375 (3d Cir. 1996) (finding prejudice where amendment would require defendant to prepare new defenses).

Plaintiff claims that defendants' claim of prejudice is "defeated by the fact that the City

-10-

voluntarily entered into a stipulation with Plaintiff . . . providing that the date for filing of dispositive motions and the trial date 'shall be deferred and postponed pending the disposition of Plaintiff's Motion to Amend the Complaint and any pre-trial proceedings that occur or are allowed following the Court's ruling on that motion.'" Dkt. No. 25 at 14, quoting Dkt. No. 21.  I disagree.  The stipulation does not preclude defendant from claiming it will be prejudiced if the Motion to Amend is granted.  The stipulation merely allowed the parties to defer filing dispositive motions until after the Court's ruling on the instant motion to amend and preserved the parties' rights to engage in any further pretrial proceedings that thereafter might be required.

The causes of action that plaintiff now seeks to assert arise out of the same facts as the claims set forth in his initial complaint, but plaintiff's proposed amendments involve different parties and his new claims involve different elements.  Adding the new defendants, the Bivens claims and the conspiracy cause of action would clearly change the timing and scope of motion practice and at "at such a late stage in the litigation would deprive the defendants of discovery or require them to repeat processes that were already complete."  Panetta v. SAP Am., Inc., 294 Fed. App'x 715, 718 (3d Cir. 2008); see also Whitman v. Proconex, Inc., No. 08-2667, 2009 WL 113740, at *3 (E.D. Pa. Jan. 14, 2009) (finding that defendant would be prejudiced and denying leave to amend where, prior to the close of discovery, plaintiff had sufficient information to put her on notice that amendment might be appropriate).

## II.    Motion for Leave to Substitute

Foglia died on or about April 14, 2011.  Rule 25(a)(1) of the Federal Rules of Civil Procedure provides:

> [i]f a party dies and the claim is not extinguished, the court may
> order substitution of the proper party.  A motion for substitution

-11-

> may be made by any party or by the decedent's successor or
> representative.  If the motion is not made within 90 days after
> service of a statement noting the death, the action by or against the
> decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).  Plaintiff filed a statement noting Foglia's death with the Court on May

20, 2011 and on July 21, 2011, moved for leave to substitute an "unknown successor or

representative of Enrico Foglia for defendant Enrico Foglia."  This motion is unopposed.

"Nothing in Rule 25 itself states that the notice or suggestion of death must identify the

decedent's successor.  Thus, the statement of death was adequate to start the ninety day period"

set forth in Rule 25(a)(1).  Williams v. Baron, No. 2:03-cv-2044, 2009 WL 331371, at *3 (E.D.

Ca. Feb. 10, 2009).  Rule 25, however, does not provide for the substitution of an unknown party.

See id.  I will instead construe plaintiff's motion for substitution as a motion under Rule 6(b)(2)

to enlarge the timeframe for substitution in accordance with Rule 25(a)(1).  I will grant plaintiff

30 days in which to conduct discovery with respect to the identity of the decedent's successor

and to identify a party for substitution.

An appropriate Order follows.